Goldie **MILLER**, Appellant,

v.

**STATE TREASURER, as custodian
of the Second Injury Fund,
Respondent,**

and

**Conagra, Inc., Defendant.**

**No. WD 55323.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1998.

Jerrold Kenter, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Elaine R. O'Hara, Asst. Atty. Gen., Kansas City, for Respondent.

SPINDEN, Presiding Judge.

Goldie Miller appeals the Labor and Industrial Relations Commission's final award[1] of "permanent partial disability" benefits of $153.21 for 40 weeks from the Second Injury Fund.[2] We reverse and remand for the commission's determination of the amount of permanent *total* disability benefits due her.

Miller quit her job at ConAgra, Inc., on March 15, 1994, after she was unable to perform her duties of processing turkey and chicken meat on the production line. During the first 14 of her 21 years with ConAgra, Miller deboned turkeys and chickens. In 1987, because she had difficulty gripping her knife, ConAgra transferred her to its processing section where she cut turkey and chicken meat with scissors. In late 1987, physicians concluded that Miller suffered bi-

---

1. The parties assume we have jurisdiction although no judgment has been entered by a court of competent jurisdiction. Miller appeals pursuant to § 287.495.1, RSMo 1994, authorizing claimants to appeal the commission's final awards directly to this court. In another context, the Supreme Court has declared that this court lacks jurisdiction to consider appeals from cases in which no judgment has been entered by a court of competent jurisdiction. *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998). Because the Supreme Court has noted the statute's provision for a direct appeal without expressing concern about this court's jurisdiction to consider a case notwithstanding the lack of a judgment, *Goodrum v. Asplundh Tree Expert Company*, 824 S.W.2d 6, 8–9 (Mo. banc 1992), we do not concern ourselves further with the issue *sua sponte*.

2. She does not challenge the commission's final award of $153.21 for 50 weeks and $500 for future treatment to be paid by her employer, ConAgra, Inc.

lateral carpel tunnel syndrome, and they performed surgery on her left wrist.

Beginning in January 1993, Miller suffered debilitating headaches. She sometimes was unable to find her work station or her car. Physicians concluded that she suffered two brain aneurysms, and surgeons performed a craniotomy on January 19, 1993, to repair one of them. She returned to work about six weeks later, but she experienced weak muscles, imbalance, dizziness, and diminished vision. She often left her station because of these problems.

Those problems continued on March 15, 1994, when Miller reported to her supervisor that she was having pain in her wrists, was unsteady when she stood, was dizzy at times, and sometimes fell asleep while working. The plant's personnel officer recommended that she take time off to determine what was causing her problems. Miller did, but she never returned to work.

In July 1994, Miller's physician referred her to rheumatology specialists at the University of Kansas Medical Center. They concluded that she suffered fibromyalgia, a disease causing muscle and joint pain. They noted that Miller had reported that she had suffered muscle and joint pain for several years and that the pain had increased to the point that she was unable to perform any of her daily living activities.

On May 27, 1994, Miller claimed workers' compensation because of "[p]ermanent injury to and disability of [her] right upper extremity, left upper extremity, spine, neck, back, shoulders, right lower extremity, left lower extremity, hips, body as a whole." Three years later, after a hearing on the claim, Administrative Law Judge Nelson G. Allen said in his findings of fact and conclusions of law that Miller "testified she is unable to work and I believe her." He also found:

> [In 1987, Miller] began to have pain in her joints and muscles all over her body. Her right arm was worse than her left. She had problems straightening her hands out. She was unable to hold a gallon of milk. She still has these problems to the same degree.

[ConAgra] sent her to Dr. Finch. She did not improve. On July 29, 1994, she was treated at the Rheumatology Clinic at the University of Kansas Medical Center. On August 1, 1994, Dr. Janet Schwartzenberg and [Dr.] Kathryn Welch diagnosed the claimant as suffering fibromyalgia.

After reciting what other physicians had concluded, Administrative Law Judge Allen found, "[A]s a result of claimant's repetitive work at Conagra[,] she sustained permanent partial disability in the amount of 12.5% body as a whole" beginning on March 15, 1994, "the last day she worked and was exposed to the repetitive use." He explained, "Even though the claimant had symptoms of fibromyalgia prior to March 15, 1994, it was not diagnosed as fibromyalgia[,] and it was not disabling. I find ... that March 15, 1994, is the determinative date of claimant's injury."

In evaluating whether the Second Injury Fund was liable, Administrative Law Judge Allen said:

> There is little doubt the claimant is permanently[,] totally disabled; however, the reason she is totally disabled is not because of her prior disabilities combining with her fibromyalgia. It is because of her brain aneurysms and subsequent craniotomy.
>
> She is [unable] to work because of her memory problems and becoming disoriented at work and while driving. She also said [that] it was dangerous for her to become dizzy or asleep at the production line.
>
> Section 287.220 RSMO not only requires that disabilities be preexisting the alleged injury but they must combine in either total disability or combine to result in disability substantially greater than the last injury alone.
>
> Here there was no evidence of how the brain injury combined with the fibromyalgia. Claimant's request for permanent total disability is denied.
>
> I do find ... that the claimant did have a preexisting industrial disability in the amount of 15% body as a whole for her bilateral carpal tunnel syndrome and an additional 15% permanent partial disability to the body as a whole as a result of her

degenerative disk disease. These combine with the 12.5% body as a whole for claimant's fibromyalgia to result in a permanent partial disability of 52.5%.[3] I order and direct the Treasurer of the State of Missouri to pay to claimant the sum of $153.21 for 40 weeks for a total of $6128.40.

On December 5, 1997, the commission adopted Administrative Law Judge Allen's decision.

Miller's only point on appeal is that the commission erred in not awarding her permanent *total* disability benefits from the Second Injury Fund pursuant to § 287.220.1.[4] In what surely must be two of the most amazing sentences in Missouri's statutes, the General Assembly said in § 287.220.1:

> If any employee who has a preexisting permanent partial disability[,] whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for. If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the "Second Injury Fund" hereby created exclusively for the purposes as in this section provided and for special weekly benefits in rehabilitation cases as provided in section 287.141.

---

**3.** The percentages seem to add up to only 42.5 percent, not 52.5 percent. If this was not a mathematical error, Administrative Law Judge Allen does not account for the additional 10 percent.

**4.** All citations to statutes refer the 1994 Revised Statutes.

Miller accuses the commission[5] of a lapse in logic. She notes that, although the commission found her to be permanently and totally disabled because of her aneurysms, it concluded that it could order compensation only for a partial disability because she did not establish that her aneurysms and other debilitating diseases did not combine with the fibromyalgia to cause total disability.

We agree that the commission erred. Although it concluded that Miller was permanently and totally disabled, it concluded that her aneurysms alone were the cause. It concluded, nonetheless, that it should ignore the totally disabling aneurysms and should compensate her only for the partially disabling ailments she suffered, including the fibromyalgia, because Miller did not show that the aneurysms and her other preexisting disabilities "combined" with her fibromyalgia to render her totally disabled.

We find no basis for the commission's determination that Miller's aneurysms alone rendered her totally disabled. The aneurysm which was not corrected by the January 1993 craniotomy apparently continued to make doing her work difficult, but she still worked for about a year after her craniotomy. Although she would sometimes become dizzy, fall asleep at her work station or become disoriented or confused, she apparently managed to perform her duties at an acceptable level. ConAgra did not ask her to leave. She continued working, albeit with great effort, until the fibromyalgia set in. The fibromyalgia became, in effect, the "last straw." After losing her ability to manipulate her scissors, she saw no way to overcome all of her difficulties, and she told ConAgra's personnel manager that she could not do her job anymore.

The commission's conclusion that Miller's aneurysm rendered her permanently and totally disabled is not supported by substantial and competent evidence. We, therefore, pursuant to § 287.495.1, reverse the commission's award. *Johnson v. Denton Construc-*

*tion Company,* 911 S.W.2d 286, 288 (Mo. banc 1995).

The State Treasurer argues that ConAgra merely overlooked Miller's problems when she returned to work after the craniotomy. The record does not support this. Miller's testimony, not contradicted by the State Treasurer, was that she sometimes had spells of dizziness and unsteadiness and that she would go to the restroom to sit down until her balance returned; otherwise, she said, she was able to do her job. Miller testified, again without contradiction, that the reason she quit her job was the pain in her wrists. When she asked the plant nurse to wrap her wrists, the personnel manager recommended that she stop work and have a physician examine her. She testified, without contradiction, that, as far as she knew, ConAgra had no problem with her work; certainly, no manager or supervisor said anything to her about her not doing her job.

Bob Maddox, ConAgra's personnel manager agreed that, had Miller not met her production line quota, ConAgra would have replaced her. He said that ConAgra "didn't have any problem with the work she was doing ... up until the day she voluntarily retired[.]"

That Miller's aneurysm did not result from a work-related injury is of no consequence. Section 287.220.1 requires only that it be a preexisting disability which is serious enough to hinder or block Miller's doing her job or obtaining reemployment. Miller clearly established that her fibromyalgia exacerbated her problems with the aneurysm and other preexisting disabilities. The State Treasurer does not contest the commission's finding that Miller was permanently and totally disabled. Hence, the commission should have found that the Second Injury Fund should compensate Miller for her permanent, total disability. We, therefore, reverse the commission's decision and remand for its determination of the amount of permanent, total

5. We refer only to the commission because it adopted Administrative Law Judge Allen's decision as its own.

disability benefits due Miller from the Second Injury Fund.

ULRICH and EDWIN H. SMITH, JJ., concur.